UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ANTHONY M.,

                   Plaintiff,

      v.

LESTER WRIGHT, M.D., et. al,

                 Defendants.

_____

<u>REPORT & RECOMMENDATION</u>

07-CV-6040G


## <u>PRELIMINARY STATEMENT</u>

Anthony M. ("plaintiff") has commenced this action against four current or former employees of the New York State Office of Mental Health ("OMH") – John J. Henderson ("Henderson"), Michael F. Hogan ("Hogan"), Sharon E. Carpinello ("Carpinello"), and Harold E. Smith ("Smith") – (collectively, "OMH defendants"), and seven current or former employees of the New York State Department of Corrections and Community Supervision ("DOCCS") – Glenn S. Goord ("Goord"), Brian Fischer ("Fischer"), Lester Wright, M.D., ("Wright"), Holly Collett ("Collett"), Wesley K. Canfield ("Canfield"), Dr. William M. Kelly ("Kelly"), and Herman A. Fowler ("Fowler") – (collectively, "DOCCS defendants"), asserting claims under 42 U.S.C. § 1983 arising out of his medical treatment during his incarceration. (Docket # 24). Currently pending before the Court is defendants' motion for summary judgment. (Docket # 78). For the reasons discussed below, I recommend that the district court grant the motion in part and deny the motion in part.

## SUMMARY OF THE PARTIES' ARGUMENTS

The OMH defendants seek summary judgment on the grounds that plaintiff's claims are barred by the statute of limitations. (Docket # 78-1 at 6-7). According to defendants, Henderson stopped providing treatment to plaintiff in August 2001, and the complaint was not filed until January 2007, more than five years later, and well beyond the three-year statute of limitations that applies to Section 1983 claims. (*Id.*). Plaintiff does not oppose this portion of the motion. (Docket # 83). Defendants also maintain that plaintiff has failed to establish that Hogan, Carpinello, or Smith had any personal involvement in the alleged constitutional violation. (*Id.* at 8-10).

The DOCCS defendants assert that they are entitled to summary judgment on the grounds that their conduct did not rise to the level of deliberate indifference. (*Id.* at 4-6). According to defendants, at best, plaintiff has stated a claim for medical malpractice, which is insufficient to state a claim for deliberate indifference. (*Id.*). Plaintiff opposes this portion of the motion, contending that he has sufficiently alleged that he suffers from a serious medical condition that causes pain and that defendants were deliberately indifferent by refusing to provide surgery to alleviate it. (Docket # 83-2 at 2-6).

The DOCCS defendants also argue that the supervisory defendants – Goord, Fischer, Wright, Collett, and Canfield – are entitled to summary judgment on the grounds that plaintiff has failed to establish any personal involvement on their part. (*Id.* at 8-10). Plaintiff asserts that he need not establish the personal involvement of supervisory defendants because he is seeking equitable relief for an ongoing constitutional violation. (*Id.* at 6-7). Further, he maintains that Wright, Collett, and Canfield were personally involved in the decision to refuse plaintiff's request for surgical intervention. (*Id.* at 5, 7-8).

Finally, the DOCCS defendants seek summary judgment on plaintiff's Fourteenth Amendment claim on the grounds that plaintiff has failed to sufficiently allege that he has been subject to disparate treatment.  (Docket # 78-1 at 7).  Plaintiff counters that at least one other inmate with the same condition has received surgery under a DOCCS policy that authorizes inmates to receive corrective surgery for the condition if they experience "pain or functional disability." (Docket # 83-2 at 9).  Because he suffers from pain but has been denied surgery that other inmates have received, he claims that he has been subject to disparate treatment.  (*Id.*).

**FACTUAL BACKGROUND**

Defendants' motion is not supported by any affidavits of any individuals with personal knowledge, and their statement of undisputed facts fails to recite adequately the material facts upon which their motion is apparently predicated.  (Docket # 78-2).  Indeed, the statement contains only nine factual assertions, some of which consist of legal conclusions and others which are not supported by citations to admissible evidence of record.  Accordingly, the Court's recitation of the facts and factual allegations is taken not only from the statements of facts submitted by the parties, but also from plaintiff's affidavit, the Second Amended Complaint, and the exhibits in the record.

Plaintiff has been diagnosed with gynecomastia, a condition affecting males that is characterized by the over-development of breasts and nipples, causing them to swell and protrude.  (Docket ## 24 at ¶¶ 22-24; 78-2 at ¶ 1; 83-3 at ¶ 1).  He maintains that his condition was caused by psychotropic medications prescribed to him while he was incarcerated.  (Docket # 24 at ¶¶ 25-27, 70-74).  Plaintiff received counseling from Henderson between February 4, 2000, and August 8, 2001.  (Docket ## 78-2 at ¶ 2; 83-3 at ¶ 2).  Henderson did not prescribe any

medication to him during the course of his treatment.  (*Id.*).  Plaintiff maintains that he informed Henderson of his gynecomastic condition in April 2001.  (Docket # 24 at ¶ 28).  According to plaintiff, Henderson advised him that his condition and accompanying symptoms would eventually subside once he stopped taking the prescribed psychotropic medications.  (*Id.* at ¶ 29).  Although plaintiff stopped the medications, his symptoms did not subside.  (*Id.* at ¶ 33).  Plaintiff alleges that during the next four years of incarceration, he suffered mockery, ridicule, harassment, sexual advances, and assaults as a result of his condition, which he reported to DOCCS staff.  (Docket ## 24 at ¶¶ 38-39; 83 at ¶ 11).

Sometime in May 2004, plaintiff learned that a surgical procedure could reverse the effects of his condition and that DOCCS had authorized similar surgeries for other inmates.  (Docket ## 24 at ¶¶ 41-42; 83-1 at ¶ 4).  He maintains that in May 2004 he sought treatment for continued "swelling, pain, and soreness to his breasts and nipples" and requested surgical intervention.  (Docket # 24 at ¶ 42).  On June 7, 2004, Kelly apparently met with plaintiff and concluded that although his nipples were protruding, he did not need further treatment or surgery.  (Docket ## 78-2 at ¶ 4; 83-3 at ¶ 4).  A treatment note made by Canfield on August 23, 2004, suggests that Canfield did not personally examine plaintiff, but concluded that surgery was not warranted.  (Docket ## 78-2 at ¶ 5; 83-3 at ¶ 5).

Plaintiff filed a grievance regarding the denial of his request for surgery.  (Docket # 83-1 at Ex. A).  The Inmate Grievance Resolution Committee (the "IGRC") responded to the grievance by indicating that it related to a medical determination beyond its purview and suggesting that plaintiff contact the Chief Medical Officer to inquire about further treatment.  (*Id.*).  Plaintiff appealed this decision to the Superintendent, who responded that Kelly had recommended against further treatment and that plaintiff was receiving appropriate medical care.

4

(*Id.* at Ex. B). Plaintiff appealed this decision to the Central Office Review Committee (the "CORC"). (*Id.*).

On August 24, 2004, Paul Guenette sent an email to Collett regarding plaintiff's condition. (Docket # 83 at ¶ 9(A) and Ex. 9). Collett responded the following day and stated that, according to Kelly, plaintiff's nipples were painful to palpation, but that he did not have a problem that required surgery. (*Id.*). Guenette replied that he would "formulate" an answer to plaintiff indicating that plaintiff "has failed to substantiate his assertion that previous prescribed med[ication] and procedures have caused his current condition and that he has been evaluated for his condition and no treatment is indicated at this time." (*Id.*). Collett concurred with Guenette's proposed course of action. (*Id.*). The following day, the CORC unanimously denied plaintiff's grievance. (Docket # 83-1 at ¶ 8 and Ex. C). The denial stated: "The grievant has failed to substantiate his assertion that previous medications or procedures have been the cause of his current condition. The grievant has been evaluated by the doctor and it was determined that no treatment is necessary at this time." (*Id.*).

On July 8, 2004, plaintiff wrote to Wright, the Chief Medical Officer, as suggested by the IGRC's response. (Docket # 83 at Ex. 7). In the letter, plaintiff informed Wright of his condition, explained that it caused him pain, and requested further treatment. (Docket ## 78-2 at ¶ 7; 83 at Ex. 7; 83-3 at ¶ 7). Collett was directed to respond to plaintiff's letter. (*Id.*). On October 27, 2004, Collett responded, stating that plaintiff's primary care provider had determined that surgery was not indicated. (Docket ## 78-2 at ¶ 7; 83-1 at Ex. D; 83-3 at ¶ 7). Canfield, the Facility Health Services Director at the Elmira Correctional Facility, was copied on Collett's letter. (Docket # 24 at ¶¶ 16, 51; 83-1 at ¶ 9 and Ex. O).

Plaintiff again sought surgery the following year.  (Docket # 83-1 at ¶ 10).  On May 24, 2005, plaintiff filed another grievance, stating that he suffered from bilateral chest enlargement that caused him pain and requesting corrective surgery.  (*Id.* at ¶¶ 10-11 and Ex. E).  Both the Superintendent and the CORC denied plaintiff's grievance on the grounds that the surgery was cosmetic in nature and not medically necessary.  (*Id.*).  Plaintiff wrote another letter to Wright dated May 30, 2005, which was again assigned to Collett for a response.  (Docket ## 87-2 at ¶ 7; 83-1 at ¶ 12 and Ex. F; 83-3 at ¶ 7).  On June 24, 2005, Collett responded by letter stating that plaintiff's doctor had indicated that surgery was not warranted.  (*Id.*).

In opposition to the pending motion, plaintiff has submitted an affidavit stating that his condition causes him to suffer pain and discomfort.  (Docket # 83 at ¶¶ 6-7).  According to plaintiff, he reported his pain and discomfort to DOCCS employees, including Wright, on numerous occasions.  (*Id.*).  He also maintains that his medical records contain objective evidence of his pain.  (*Id.* at ¶¶ 9-10).  According to plaintiff, in August 2004, Kelly reported that plaintiff's "nipples are painful to touch."  (*Id.* at ¶ 9(A) and Ex. 9).  Further, on August 17, 2005, plaintiff was examined by a nurse practitioner, Jill Northrop, who noted that plaintiff's nipples were tender to touch.  (*Id.* at ¶ 9(B) and Ex. 5).  The medical records suggest that Northrop requested an evaluation by a physician to determine whether plaintiff's condition warranted surgery.  (Docket # 83-1 at ¶ 16 and Ex. G).  This request was denied because plaintiff's condition was considered a "cosmetic problem."  (*Id.*).

In response to interrogatories propounded by plaintiff, Wright stated that DOCCS had authorized surgery for inmates diagnosed with gynecomastia, but that he was not aware of the number of inmates who had been authorized for surgery.  (*Id.* at ¶ 19 and Ex. L).  Wright

stated that in evaluating whether surgery was warranted, DOCCS considered whether an inmate

with gynecomastia experienced "pain or functional disability." (*Id.*).

## DISCUSSION

### A.    Applicable Legal Standards

Summary judgment is appropriate "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a).  In reaching this determination, the court must assess whether there are any

disputed material facts and, in so doing, must resolve all ambiguities and draw all reasonable

inferences against the moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49

(1986); *Coach Leatherware Co., Inc. v. AnnTaylor, Inc.*, 933 F.2d 162, 166-67 (2d Cir. 1991).  A

fact is "material" only if it has some effect on the outcome of the suit.  *Anderson v. Liberty

Lobby, Inc.*, 477 U.S. at 248; *Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d 92, 97 (2d Cir.

2000).  A dispute regarding a material fact is genuine "if the evidence is such that a reasonable

jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248; *see also*

*Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d at 97.

The moving party bears the initial burden of demonstrating the absence of a

genuine issue of material fact, thereby entitling the party to judgment as a matter of law.  Fed. R.

Civ. P. 56(a).  The moving party can satisfy this burden of demonstrating the absence of factual

issues by citation to "particular parts of materials in the record, including depositions,

documents, electronically stored information, affidavits or declarations, stipulations . . . ,

admissions, interrogatory answers, or other materials."[1]  Fed. R. Civ. P. 56(c)(1).  Where "the

---

[1]  Of course, the moving party is not required "to *negate* the elements of the nonmoving party's case" and
"regardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion

7

nonmovant bears the burden of proof at trial, the movant may show prima facie entitlement to summary judgment in one of two ways: (1) the movant may point to evidence that negates its opponent's claims or (2) the movant may identify those portions of its opponent's evidence that demonstrate the absence of a genuine issue of material fact, a tactic that requires identifying evidentiary insufficiency and not simply denying the opponent's pleadings." *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006).

The party requesting judgment in its favor "bears the burden of informing the [c]ourt of the basis for [its] motion and of identifying those portions of the record that [it], the moving party, believes demonstrate the absence of a genuine issue of material facts as to a dispositive issue." *Robinson v. Valdamudi*, 2013 WL 877398, *1 (N.D.N.Y.) (citing *Celotex Corp. v. Catrett*, 477 U.S. at 323), *report and recommendation adopted*, 2013 WL 877395 (N.D.N.Y. 2013). Pursuant to the Local Rules of the Western District of New York, a moving party should present to the court a "separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." W.D.N.Y. Local Rule 56(a)(1). In accordance with Rule 56(c)(1)(A) of the Federal Rules of Civil Procedure, each fact contained in the statement "must be followed by citation to admissible evidence." *Id.* Each citation must "identify with specificity the relevant page and paragraph or line number of the evidence cited. *Id.* The failure to submit a compliant statement "may constitute grounds for denial of the motion." *Id.*

---

may, and should be granted so long as whatever is before the [court] demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 885 (1990) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); *Ockimey v. Town of Hempstead*, 425 F. App'x 45, 45 (2d Cir. 2011) ("[a]lthough the burden rests on the movant to show that no genuine factual dispute exists, . . . a moving defendant is not required to file affidavits (or other materials) disproving the plaintiff's claims") (citations omitted); *Gallo v. Prudential Res. Servs., Ltd.*, 22 F.3d 1219, 1223-24 (2d Cir. 1994) ("the moving party may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case").

The court is not required to consider facts that are not contained in the statement of facts or which, although included, are not properly supported by specific record citations. *Robinson v. Valdamudi*, 2013 WL 877398 at *1 (citing *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 291 (2d Cir.), *cert. denied*, 531 U.S. 1035 (2000) and *Amnesty Am. v. Town of West Hartford*, 288 F.3d 467, 470 (2d Cir. 2002)).  Indeed, the court is not obligated to comb the record for relevant facts that have not been "adequately referenced or explained" by the moving party.  *Id.*  Further, the non-moving party's burden to oppose a summary judgment motion "arises only if the motion is properly supported," *Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001), and summary judgment is properly denied, even if unopposed, where the moving party has failed to meet its burden of production under Rule 56(c) of the Federal Rules of Civil Procedure, *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 159-60 (1970); *Giannullo v. City of New York*, 322 F.3d 139, 141 (2d Cir. 2003) ("where the movant fails to fulfill its initial burden of providing admissible evidence of the material facts entitling it to summary judgment, summary judgment must be denied, even if no opposing evidentiary matter is presented, for the non-movant is not required to rebut an insufficient showing") (internal quotations omitted).

Once the moving party has satisfied its burden, the non-moving party must come forward with sufficient evidence to support a jury verdict in its favor; the motion will not be defeated based upon conjecture, surmise or the existence of "metaphysical doubt" concerning the facts.  *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)), *cert. denied*, 502 U.S. 849 (1991).  The party seeking to avoid summary judgment "must do more than make broad factual allegations and invoke the appropriate statute.  The [party] must also show, by affidavits or as otherwise provided in Rule 56 . . . , that there are specific factual issues that can only be resolved at trial."

*Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995); *see also Driscoll v. Townsend*, 60

F. Supp. 2d 78, 80 (W.D.N.Y. 1999).

> As the Second Circuit has explained:
>
> [T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution. . . . [I]t must be kept in mind that only by reference to the substantive law can it be determined whether a disputed fact is material to the resolution of the dispute.

*Gallo v. Prudential Residential Serv., Ltd. P'ship*, 22 F.3d at 1224.

## B.    Claims Against OMH Defendants

Because Section 1983 does not provide a statute of limitations, the court must

"borrow" the limitations period from the most appropriate or analogous state statute. *Bd. of*

*Regents of Univ. of State of N.Y. v. Tomanio*, 446 U.S. 478, 483-84 (1980). Using this borrowing

approach, the applicable statute of limitations for Section 1983 actions is three years – the

limitations period provided under New York law for unspecified injury actions. *See* N.Y.

C.P.L.R. § 214(5); *Owens v. Okure*, 488 U.S. 235, 251 (1989) (applying New York's three-year

statute of limitations to Section 1983 case); *Shomo v. City of New York*, 579 F.3d 176, 181 (2d

Cir. 2009) (applying New York's three-year statute of limitations to claim for deliberate

indifference to medical needs asserted pursuant to Section 1983).

The OMH defendants contend, and plaintiff agrees, that Henderson provided

treatment to plaintiff until August 2001. (Docket ## 78-2 at ¶ 2; 83-3 at ¶ 2). Accordingly,

plaintiff's claim against Henderson accrued in August 2001, at the latest. As plaintiff's counsel

conceded at oral argument, plaintiff does not oppose this aspect of defendants' motion.[2] In any

---

[2] Plaintiff has not attempted to demonstrate that a delayed accrual date or tolling of the limitations period is justified. *See, e.g., Shomo v. City of New York*, 579 F.3d at 181 ("[t]he continuing violation doctrine is an 'exception

event, because plaintiff's complaint was filed on December 26, 2006, *see Russo v. Duprey*, 2014 WL 948851, *2 n.1 (N.D.N.Y. 2014) ("[u]nder the 'prison mailbox rule,' the date of filing is deemed to be the date that the prisoner delivered his complaint to a prison guard for mailing to the court; absent other evidence, this is presumed to be the date that the complaint was signed"), I conclude that his claims against Henderson are time-barred because he has failed to allege any conduct on Henderson's part that occurred after December 26, 2003, three years prior to the filing of the complaint.  *See Shomo*, 579 F.3d at 184 (claim against medical doctors properly dismissed where there was no claim that they committed wrongful acts during the limitations period); *Cummings v. Patterson*, 2013 WL 5674490, *3 (W.D.N.Y. 2013) (dismissing claims against certain defendants where plaintiff failed to allege that those defendants committed any wrongful act within the limitations period; "in order for the continuing violation theory to apply, plaintiff must allege that the defendant committed a wrongful act within the statute of limitations") (internal quotations omitted); *Mitchell v. Goord*, 2011 WL 4747878, *5 (W.D.N.Y.) (denying motion to amend to add time-barred claims; "even if [plaintiff] could successfully invoke the continuing violation theory to allege that DOCS maintained an unconstitutional policy . . . , [plaintiff] has failed to allege any additional acts taken by any of the newly-named defendants in furtherance of the policy on or after January 3, 2008, three years prior to the filing of this motion"), *report and recommendation adopted*, 2011 WL 4753456 (W.D.N.Y. 2011), *reargument denied*, 2012 WL 2175779 (W.D.N.Y. 2012); *Gonzalez v. Wright*, 665 F. Supp. 2d 334, 351 (S.D.N.Y. 2009) ("[t]he continuing violation doctrine does not apply in this instance,

---

to the normal knew-or-should-have known accrual date" that provides that "the commencement of the statute of limitations period may be delayed until the last discriminatory act" if the plaintiff is able to "allege both the existence of an ongoing [violation] and some non-time-barred acts taken in furtherance of that [violation]") (internal quotations omitted).

because the evidence shows that these defendants stopped having contact with the plaintiff in 2001 and 2002 – which is well outside the statutory time period").

Having concluded that the claim against Henderson is time-barred, I conclude that the claims against Hogan, Carpinello, and Smith, Henderson's alleged supervisors, should also be dismissed. *See Elek v. Incorporated Village of Monroe*, 815 F. Supp.2d 801, 808 (S.D.N.Y. 2011) ("[a]bsent an underlying constitutional violation, there is no cognizable claim for supervisor liability") (quoting *Bryant v. Wright*, 2010 WL 3629443, *9 n. 1 (S.D.N.Y.), *report and recommendation adopted*, 2010 WL 3629426 (S.D.N.Y. 2010), *aff'd*, 451 F. App'x 12 (2d Cir. 2011)). I need not, and do not, reach the merits of the alternative argument that plaintiff has failed to sufficiently establish the personal involvement of Hogan, Carpinello, and Smith.

### C.    Claims Against DOCCS Defendants

#### 1.    Deliberate Indifference

The gravamen of plaintiff's complaint is his claim that the DOCCS defendants were deliberately indifferent to his diagnosed condition of gynecomastia because they failed to approve him for reconstructive surgery despite his complaints of pain. Defendants' submission in support of their request for summary judgment on this issue is shockingly sparse, virtually unsupported, and ignores several material facts. In any event, as explained below, I easily conclude that factual issues preclude summary resolution of this claim.

#### a.    Adequacy of Defendants' Motion

Defendants maintain that they are entitled to judgment without a trial on plaintiff's deliberate indifference claim on the grounds that there are no disputed material facts for resolution. (Docket # 78-1 at 4-6). Defendants' filing in support of their position consists of approximately 1,135 pages. (Docket # 78). Remarkably, this voluminous submission contains

not a single affidavit, pleading, interrogatory response, admission, or page of deposition

testimony.  Rather, defendants have submitted a single exhibit, totaling approximately 1,109

pages, that apparently consists of medical records, grievances, correspondence and other

documents contained in plaintiff's inmate file.  (Docket ## 78-4, 78-5, 78-6, 78-7).  Of those

1,109 pages, defendants have cited to only twenty-five pages in support of their motion.[3]

(Docket # 78-2).

       The remaining documents in support of the motion include a three-page notice of

motion, a twelve-page memorandum of law, a four-page statement of undisputed facts, and a

three-page appendix.  (Docket ## 78, 78-1, 78-2, 78-3).  The statement of undisputed facts

contains only nine factual assertions, two of which contain no citations to the record.  (Docket

# 78-2 at ¶¶ 1-9).  The documents cited in support of these facts include medical records, many

of which are indecipherable or require interpretation of medical abbreviations or symbols,

grievances and responses, and photographs of plaintiff.

       The memorandum of law merely repeats the factual assertions contained in the

statement of facts (*compare* Docket # 78-1 at 3-4 *with* Docket # 78-2) and includes generic,

boilerplate recitations of law (Docket # 78-2 at 4-12).  Indeed, the argument section of the

memorandum of law, which seeks dismissal plaintiff's complaint in its entirety, consists of

approximately six case-specific sentences, the majority of which are entirely conclusory.

       Despite the sparse quality of defendants' submission, the thrust of their argument

for summary judgment on the deliberate indifference claim is nonetheless discernible.

---

[3]  As I indicated to counsel during oral argument, it is not a court's obligation to review thousands of pages of documents to determine whether they contain any material information; rather, it is counsel's duty to present the material facts to the court with citations to record evidence.  Accordingly, this Court has not conducted an independent review of any of the pages that were not specifically cited by defendants in their submission.  *See Houser v. Folino*, 2014 WL 3696130, *20 (W.D. Pa. 2014) ("judges are not like pigs, hunting for truffles buried in briefs[;] . . . if factual support for a party's claims or defenses exist in the record, it is incumbent on the party to direct the court's attention to those facts") (internal quotations omitted).

According to defendants, no dispute exists that plaintiff was evaluated by a DOCCS physician who determined that surgery was not warranted.  (Docket # 78-1 at 5-6) ("[p]laintiff was evaluated by Dr. Kelly and no treatment was indicated"; "[t]o the extent that plaintiff claims defendants should have referred him to a specialist for surgery, that merely constitutes a difference of opinion between plaintiff and his primary care physician and is not adequate to make out a successful claim for deliberate indifference").  Defendants contend that plaintiff's claim amounts to nothing more than a disagreement between his treating physician and him, which is insufficient as a matter of law to constitute deliberate indifference.

Defendants assert that the following facts are undisputed and material to this issue:

1)    Neither plaintiff's medical and mental health records nor photographs of him (taken on November 27, 2002) show a condition of urgency – one that may produce death, degeneration, or extreme pain (Docket # 78-2 at ¶ 3 (citing Docket ## 78-5 at Bates Nos. 000367, 000369; 78-6 at Bates Nos. 000713-000718));[4]

2)    On June 7, 2004, Dr. Kelly found that no medical necessity existed for treatment (Docket # 78-2 at ¶ 3 (citing Docket ## 78-5 at Bates No. 00369; 78-6 at Bates Nos. 000664, 000672, 000671[5])); and,

3)    On August 23, 2004, Dr. Canfield, the Elmira Correctional Facility Health Director, also concurred that surgery was not indicated (Docket # 78-2 at ¶ 4 (citing Docket # 78-5 at Bates No. 000369)).[6]

---

[4]   Although defendants include this assertion in their statements of facts, it is properly a legal conclusion, which, as discussed below, is unsupported by any evidence of record.

[5]   The bates number cited by defendants actually reads "00071."

[6]   Defendants also maintain that on January 19, 2005, Fowler evaluated plaintiff without finding any mass or nodule and recommended following up with the physician.  (Docket # 78-2 at ¶ 6).  Defendants failed to cite any record evidence in support of this statement.  (Docket ## 78-2 at ¶ 6; 83-3 at ¶ 6).  Given the failure to cite any evidence in support of this statement, the Court will disregard it.  *See Henry v. Cmty. Res. Ctr.*, 1996 WL 251845, *1 n.2 (S.D.N.Y. 1996) ("where an alleged fact in [a party's statement of facts] is not supported by admissible evidence, the [c]ourt cannot consider it").

14

In support of these three factual assertions, defendants have cited to eleven pages from the record – medical treatment notes dated June 7, 2004, August 23, 2004, December 2, 2004, January 8, 2005 and January 19, 2005; a letter from plaintiff to the IGRC dated June 9, 2004; a response from the Superintendent dated July 23, 2004; and, six photographs of plaintiff apparently taken on November 27, 2002.  (Docket ## 78-5 at Bates Nos. 000367, 000369; 78-6 at Bates Nos. 000664, 000671, 000672, 000713-000718).  As an initial matter, it is far from clear that these records may properly be considered by the Court, despite defendants' conclusory and unsupported statement that they constitute business records (Docket # 78-3 at 2) and their inclusion of a certification that does not indicate the documents, if any, to which it applies (Docket # 78-4 at Bates No. 000001-000003).  *See Moran v. Livingston*, 155 F. Supp. 3d 278, 285 (W.D.N.Y. 2016) (medical records unaccompanied by sworn statement demonstrating proper foundation for admissibility not properly before court on summary judgment motion) (collecting cases); *see also Pearson v. Prison Health Serv.*, 519 F. App'x 79, 82 (3d Cir. 2013) ("[defendant] simply submitted [plaintiff's] medical records, but there was no affidavit attesting to the authenticity or completeness of the records").

In any event, the mass of documents, many of which are medical records, are unaccompanied by any "affidavits, declarations, deposition testimony or expert medical reports explaining to the [c]ourt the meaning of the medical records."  *See Houser v. Folino*, 2014 WL 3696130 at *7 ("the record produced by [d]efendants in support of summary judgment is, essentially, an unauthenticated, unexplained accumulation of grievances, progress notes, reports and other medical documents, and refusal of treatment forms"); *Varner v. Jin*, 2014 WL 241752, *1 (W.D. Pa. 2014) (defendant's statement of facts "purport[s] to interpret various notes, symbols and abbreviations contained in the medical records; for example, the notation "sx" is

rendered as [symptoms][,] . . . [h]owever, [d]efendants have not provided any supporting affidavits regarding the content of [p]laintiff's medical records"); *Allen v. Warden of Dauphin Cty. Jail*, 2009 WL 4406121, *3 n.2 (M.D. Pa. 2009) ("[t]he defendants base their statement regarding medication on excerpts from the plaintiff's medical records, but the defendants have not authenticated those records or presented an affidavit or declaration from anyone interpreting those records"); *Taylor v. Walker*, 2009 WL 87433, *1 (C.D. Ill. 2009) ("the defendant attached dozens of pages of medical documents to support his claim without an affidavit from any medical professional verifying or interpreting those records"); *Warman v. Sims*, 2006 WL 771324, *1 (C.D. Ill. 2006) (requiring defendants to "provide affidavits from medical personnel verifying and interpreting the medical records and providing evidence about any medical care the plaintiff did receive"). The absence of an affidavit is especially troubling here because several of the treatment notes relied upon by defendants are illegible, making it impossible to decipher the words in the notes, as well as their meaning and significance.

For instance, the handwritten notes contained in Kelly's June 7, 2004, treatment record are difficult to decipher, and the majority of the words are simply incomprehensible. (Docket # 78-5 at Bates No. 000369). As an initial matter, the notes suggest that Kelly met with plaintiff regarding his gynecomastia, although the Court cannot discern whether Kelly conducted a physical examination of the plaintiff. (*Id.*). Further, with respect to pain, the notes appear to state "nipples non tender to ? sl. tender." (*Id.*). The notes also contain a statement that appears to read "no [ ] needed." It is impossible to decipher whether the illegible word is "Tx," "Rx," "Dx," or another abbreviation or symbol altogether. (*Id.*). Defendants apparently interpret this notation to indicate that Kelly determined that "no medical necessity existed for treatment" (Docket # 78-2 at ¶ 4); such an interpretation, however, rests on speculation.

The meaning of the treatment note dated August 23, 2004, is also indiscernible. The note appears to have been made and signed by Canfield, and it suggests that he never personally examined plaintiff.  (Docket # 78-5 at Bates No. 000369).  It also contains Collett's name and a phone number.  (*Id.*).  According to the note, Canfield apparently concluded that plaintiff did not have any "need for nipple reduction," although the note reflects no explanation of the basis for that decision.

The treatment notes dated December 2, 2004, and January 8, 2005, likewise contain words, abbreviations, and symbols that require translation and interpretation.  (*Id.* at Bates No. 000367).  The note dated December 2, 2004, is completely indecipherable.  (*Id.*).  The note dated January 8, 2015, appears to read as follows:

> c/o bilat nipples
> swollen + painful
> Refused to show nurse status
> I've told 'MD/nurse before +
> nothing is getting done'
> on list for NP.

(*Id.*).  The author's name is illegible.  (*Id.*).  Again, this note requires interpretation of abbreviations such as "c/o," "bilat," and "NP."

The final note cited by defendants, dated January 19, 2005, appears to read:

> Enlarged nipples – ongoing
> thinks it developed $\overline{p}$ Mental Health
> meds.
> Exam bilateral enlargement of
> nipples, breast sl. enlarged
> ø mass ø nodules
> Labs – next SHU F/u $\overline{p}$.

(*Id.*).  The author's name is not clearly legible, although it could be defendant Fowler.

The absence of any affidavit requires the Court to speculate not only as to the translation of the words in the treatment notes, but also as to the meaning of the observations and

information in the notes and the conclusions, and bases for those conclusions, that derive therefrom.  For instance, the Court is left to speculate as to whether Kelly conducted an examination of plaintiff, whether he personally determined that plaintiff's nipples were not tender or slightly tender, whether he considered surgery as a treatment option, and what considerations supported his purported conclusion that further treatment was not warranted, including whether he considered plaintiff's complaints of pain.  Similarly, the Court lacks information regarding whether Canfield examined plaintiff, reviewed his medical records, or spoke to any of his examining physicians.  Thus, it is impossible for the Court to determine whether Canfield's purported conclusion that plaintiff did not require surgery was based upon his own medical evaluation or whether his "conclusion" was simply a reiteration of information obtained from Collett.

Remarkably, defendants have cited to six photographs of plaintiff without providing any affidavit explaining what the photographs are intended to depict or their significance to plaintiff's medical condition.  Defendants nonetheless contend that these photographs somehow support their assertion that plaintiff's condition was not one of urgency or one that could produce death, degeneration, or extreme pain.  (Docket # 78-2 at ¶ 3 (citing Docket # 78-6 at Bates Nos. 000713-000718)).  The implied suggestion that the Court may permissibly make findings and conclusions regarding the severity of plaintiff's condition from unexplained photographs is preposterous.

In sum, the treatment notes and photographs, without more, do not support the conclusory statement that plaintiff's condition was not urgent or likely to produce death, degeneration, or extreme pain.  (Docket # 78-2 at ¶ 2).  Similarly, although the treatment notes suggest that both Kelly and Canfield concluded that surgery was not warranted, it is not clear

what considerations supported their conclusions.  Without an affidavit or other evidence explaining the meaning and significance of the photographs and medical records, the Court cannot conclude that no triable issue of fact exists whether the treatment provided by DOCCS defendants was constitutionally sufficient.  *See Houser*, 2014 WL 3696130 at *7 (absence of affidavit left court with no explanation of "reasonableness or efficacy of the treatments" provided by defendants); *see also Pearson v. Prison Health Serv.*, 519 F. App'x at 82 ("it is [defendant's] burden as the movant to show that there is no genuine issue of material fact[;] [defendant] simply submitted [plaintiff's] medical records, but there was no affidavit attesting to the authenticity or completeness of the records[,] [and defendant] did not submit an affidavit describing his treatment of [plaintiff] or explaining the reasons for the treatment and its timing . . . [or] any evidence indicating that the delay in treatment [plaintiff] endured while allegedly in pain and bleeding . . . was reasonable").

### b.  <u>Medical Care</u>

To establish a claim under Section 1983, a plaintiff must demonstrate that the challenged conduct (1) was "committed by a person acting under color of state law"; and (2) "deprived [the plaintiff] of rights, privileges or immunities secured by the Constitution or laws of the United States."  *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994).  Section 1983 creates no substantive rights; instead, it provides a "procedure for redress for the deprivation of rights established elsewhere."  *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999).  In this case, no genuine dispute exists that defendants were acting under color of state law.  Rather, the dispute is whether their actions violated plaintiff's constitutional rights.

"Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain.'"  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)

(quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)).  "In order to establish an Eighth

Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate

indifference to [his] serious medical needs.'"  *Smith v. Carpenter*, 316 F.3d 178, 183 (2d Cir.

2003) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).  This standard contains

both a subjective and an objective component.  *Id.*

### (1)  **Objective Component**

The objective component asks "whether there has been a sufficiently serious

deprivation of the prisoner's constitutional rights."  *Sowell v. Chappius*, 695 F. Supp. 2d 16, 20

(W.D.N.Y. 2010); *Smith v. Carpenter*, 316 F.3d at 184 ("a prisoner must first make a threshold

showing of serious illness or injury").  "A medical need is 'serious' for constitutional purposes if

it presents 'a condition of urgency' that may result in 'degeneration' or 'extreme pain.'"  *Sowell*

*v. Chappius*, 695 F. Supp. 2d at 20 (quoting *Chance v. Armstrong*, 143 F.3d at 702).  The

objective inquiry is highly fact-specific, but factors to consider include "(1) whether a reasonable

doctor or patient would perceive the medical need in question as 'important and worthy of

comment or treatment'; (2) whether the medical condition significantly affects daily activities;

and (3) 'the existence of chronic and substantial pain.'"  *Brock v. Wright*, 315 F.3d 158, 162 (2d

Cir. 2003) (quoting *Chance*, 143 F.3d at 702).

In cases involving a delay or interruption in the provision of medical treatment,

"the seriousness inquiry is 'narrower,' . . . and focuses on the particular risk of harm that resulted

from the delay or interruption in treatment rather than the severity of the prisoner's underlying

medical condition."  *Hamm v. Hatcher*, 2013 WL 71770, *8 (S.D.N.Y. 2013) (quoting

*Salahuddin v. Goord*, 467 F.3d at 279-80).  Under such circumstances, "it [is] the particular risk

of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of

the prisoner's underlying medical condition, considered in the abstract, that is relevant for Eighth Amendment purposes." *Smith*, 316 F.3d at 186.

Considering the above standards, the first question is whether this case involves a delay in medical treatment or a denial of treatment. *See Ippolito v. Goord*, 2012 WL 4210125, *9 (W.D.N.Y. 2012) ("Eighth Amendment cases regarding inadequate medical care generally fall into two categories: denial of treatment and delay in treatment [and . . .] the analyses are subtly different"). In this case, plaintiff was diagnosed with gynecomastia during his period of incarceration. (Docket ## 78-2 at ¶ 1; 83 at ¶¶ 3-4; 83-3 at ¶ 1). The record demonstrates that beginning in May 2004 plaintiff requested surgical treatment for his condition and that his request was repeatedly denied by DOCCS personnel. His requests were denied on the grounds that the requested surgery was considered "cosmetic." On this record, I conclude that this case involves a denial of medical care claim. *See Hilton v. Wright*, 928 F. Supp. 2d 530, 547-48 (N.D.N.Y. 2013) ("[b]ecause the alleged deprivation is that defendants failed to provide *any* treatment for [plaintiff's] medical condition, the focus must be on the nature of his medical condition"); *Ippolito v. Goord*, 2012 WL 4210125 at *9-10 (claim properly characterized as denial of treatment as opposed to delay in treatment where plaintiff was originally treated for disease, but subsequent treatments were denied); *Hatzfeld v. Eagen*, 2010 WL 5579883, *10-11 (N.D.N.Y. 2010) (claim properly treated as a denial of medical care where plaintiff was not "regularly receiving treatment for his underlying condition"), *report and recommendation adopted*, 2011 WL 124535 (N.D.N.Y. 2011). Thus, the objective inquiry should focus upon the nature of plaintiff's medical condition. *See Hilton v. Wright*, 2013 WL 873826 at *10.

Although gynecomastia can be a benign condition that does not require treatment, *see White v. Clement*, 116 F. Supp. 3d 183, 187 (W.D.N.Y. 2015) (gynecomastia unaccompanied

by complaints of pain was "benign swelling of breast tissue"); *Fryman v. Traquina*, 2009 WL 5199257, *6 (E.D. Cal. 2009) ("[i]n general, gynecomastia is a benign condition that does not cause pain"), *report and recommendation adopted*, 2010 WL 624389 (E.D. Cal. 2010), the condition is not always benign and can cause pain, requiring treatment, including diagnostic testing or surgery, *see Williams v. Koenigsmann*, 2015 WL 4393321, *3 (S.D.N.Y. 2015) (plaintiff's gynecomastia was sufficiently severe where he complained of pain and endocrinologist had recommended surgical consult after opining that pain would not resolve on its own), and DOCCS itself has recognized that the condition may warrant surgical intervention when it is accompanied by "pain or functional disability." (Docket 83-1 at Ex. L at 4).

Defendants argue that "[n]one of the medical/mental health records and photographs of the plaintiff . . . show a condition of urgency, one that may produce death, degeneration, or extreme pain" (Docket # 78-2 at ¶ 3). They have not proffered any evidence, however, to demonstrate or even suggest that plaintiff's condition did not cause him pain or that he received any treatment to alleviate his alleged pain. To the extent that they rely on treatment notes authored by Kelly and Canfield, their reliance is unavailing for the reasons discussed above – the conclusory assertions contained in those treatment notes are simply inadequate to establish that plaintiff's condition was not sufficiently painful to be considered a serious condition or that he was provided any treatment to address his pain. *See Kelsey v. City of New York*, 2007 WL 1352550, *5 (E.D.N.Y. 2007) (citing 8 C.Wright, A. Miller & E. Cooper, *Federal Practice & Procedure*, § 63:716 ("[c]onclusory affidavits, even from expert witnesses, do not provide a basis upon which to grant or deny motions for summary judgment")), *aff'd*, 306 F. App'x 700 (2d Cir. 2009). Further, the two cases relied upon by defendants to suggest that gynecomastia is not a severe condition are inapposite because neither involved complaints of ongoing pain. *See*

*Van Buren v. Willard*, 2014 WL 2524164, *5 (E.D. Ca. 2014) ("although [p]laintiff alleges that

surgery is his only remedy for significant pain, his medical records do not include any

complaints of pain"); *Nelson v. Rodas*, 2002 WL 31075804, *7, 14 (S.D.N.Y. 2002) (plaintiff

failed to state deliberate indifference claim relating to gynecomastia where entire claim relied

upon medical report diagnosing condition but containing no complaints of pain).

       Indeed, the record, as marshalled by plaintiff in opposition to this motion, is

replete with both objective and subjective documented references to pain experienced by plaintiff

due to his diagnosed gynecomastia. (Docket # 83 at ¶¶ 6-10 and Exs. 5-9). Considering the

record as a whole, defendants have failed to establish that plaintiff has not raised a triable issue

of fact that he suffered from a serious medical condition. *See Williams v. Koenigsmann*, 2015

WL 4393321 at *3 (summary judgment denied where plaintiff alleged that gynecomastia caused

pain and defendants refused surgery on grounds that it was "cosmetic"); *Fryman v. Traquina*,

2009 WL 5199257 at *9 ("the undersigned finds that a reasonable juror could conclude that

plaintiff's left breast gynecomastia and related pain constituted an objective serious need for

medical treatment").

### (2)   **Subjective Component**

       The subjective component requires the court to consider "whether the deprivation

was brought about by defendants in wanton disregard" of the plaintiff's constitutional rights.

*Evans v. Manos*, 336 F. Supp. 2d 255, 260 (W.D.N.Y. 2004) (citing *Wilson v. Seiter*, 501 U.S.

294, 298-99 (1991)). In other words, the subjective prong addresses the question whether the

defendant has acted "with a sufficiently culpable state of mind." *Hathaway v. Coughlin*, 37 F.3d

63, 66 (2d Cir. 1994) (citations omitted), *cert. denied*, 513 U.S. 1154 (1995). Culpability

depends on proof that the defendant "knows of and disregards an excessive risk to inmate health

or safety; [the defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

As to the subjective component, mere negligence is insufficient, as the Eighth Amendment does not contemplate medical malpractice claims; rather, "[a]n official acts with the requisite deliberate indifference when that official 'knows of and disregards an excessive risk to inmate health or safety.'" *Smith*, 316 F.3d at 184. This standard is equivalent to recklessness in criminal law. *Id.* "[M]ere negligence is not actionable." *Sowell*, 695 F. Supp. 2d at 20. "Rather, the plaintiff must allege conduct that is 'repugnant to the conscience of mankind' . . . or 'incompatible with the evolving standards of decency that mark the progress of a maturing society.'" *Id.* (quoting *Estelle v. Gamble*, 429 U.S. at 102, 105-06). Thus, deliberate indifference requires a plaintiff to demonstrate conduct that is "more than negligence, but less than conduct undertaken for the very purpose of causing harm." *Murphy v. Corr. Med. Servs.*, 2006 WL 367842, *5 (D. Vt. 2006).

The facts before the Court, viewed in the light most favorable to non-movant plaintiff, present an issue of fact whether defendants were deliberately indifferent to his medical condition. Defendants apparently concede that several of the DOCCS defendants were aware of plaintiff's condition,[7] but attempt to characterize plaintiff's claim as a mere disagreement over the appropriate treatment for his gynecomastia. (Docket # 78-1 at 6). According to defendants, Kelly and Canfield's treatment notes establish that further treatment for plaintiff's condition was not warranted. (Docket # 78-2 at ¶¶ 4-5). In short, defendants contend that because mere disagreement over the proper course of treatment does not amount to a constitutional claim, and

---

[7] Several of the DOCCS defendants, including Fischer, Goord, Wright, Canfield and Collett, maintain that they were not personally involved in any alleged constitutional violation. (Docket # 78-1 at 8-10). Those issues are addressed *infra*.

because Kelly and Canfield concluded that the treatment provided was adequate, the DOCCS defendants are therefore entitled to summary judgment.

Defendants argue that because Kelly evaluated plaintiff on a single occasion and concluded at that time that he did not need any treatment, they have established that plaintiff was provided adequate care.  Defendants' characterization, however, is inconsistent with the facts asserted in this motion.  Plaintiff alleges that he suffered ongoing pain due to his gynecomastia for several years and that he repeatedly requested surgical intervention.  His medical record contains references to pain, and defendants have pointed to nothing in the record to establish that Kelly was unaware of plaintiff's pain.  Indeed, plaintiff has submitted a document that reflects that Kelly was well aware of plaintiff's pain.  (Docket # 83 at ¶ 9(A) & Ex. 9).  Further, defendants have failed to identify anything in the record to demonstrate that any of the DOCCS defendants determined that plaintiff's pain could be managed or alleviated through non-surgical treatment, or that such non-surgical treatment was even attempted.  Rather, the record suggests that plaintiff was repeatedly told that he would not receive treatment for his gynecomastia because his condition was considered "cosmetic" and that his complaints of pain were dismissed.

Defendants' motion ignores evidence suggesting that Northrup, a member of the medical staff, physically examined plaintiff on March 17, 2005, determined that his condition caused pain and, based upon her findings, requested that a physician examine him to determine if surgery was warranted.  (Docket # 83-1 at ¶¶ 14-17 and Exs. G, H, I).  In addition, plaintiff has submitted a document apparently reflecting that a member of the DOCCS medical staff ordered reconstructive surgery for plaintiff, although it was never scheduled.  (*Id.* at ¶ 18 and Ex. J).

In other words, defendants have not identified anything in the record to support the contention that plaintiff received *any* treatment for his painful gynecomastic condition, much

25

less constitutionally adequate treatment.  Nor is there any evidence to suggest that plaintiff's condition did not require treatment.  As indicated above, the record in fact contains evidence that in 2005 DOCCS medical staff, including Northrup, determined that plaintiff's condition should be evaluated for further treatment, including surgery.  *See Houser*, 2014 WL 3696130 at *21 ("[p]laintiff continues to complain of pain in his breast, not to mention discharge, embarrassment and other discomforts, and there has apparently been no other 'treatment' or follow up testing since 2007[;] . . . [s]uffice to say that it will be for a jury to determine whether [d]efendants have been deliberately indifferent to his breast deformity/lump in his chest"); *Fryman*, 2009 WL 5199257 at *13 ("[i]t is undisputed that the defendants had the authority to authorize surgery for plaintiff, but they denied the procedure as 'cosmetic' even though it appeared to be medically necessary under at least one view of the evidence[;] [u]nder these circumstances, a reasonable juror could find that, based on the evidence before the court, the defendants ignored plaintiff's serious medical needs").  Accordingly, I recommend that the district court deny defendants' motion for summary judgment dismissing plaintiff's claim for deliberate indifference.

## 2. **Personal Involvement**

Goord, Fischer, Wright, Collett, and Canfield contend that they cannot be held liable under Section 1983 because plaintiff has failed to establish that they were personally involved in the events giving rise to his claims.  (Docket # 78-1 at 8-10).  Plaintiff has opposed this portion of the motion contending that he is not required to establish personal involvement because he seeks equitable relief.  (Docket # 83-2 at 6-9).  Additionally, plaintiff maintains that he has sufficiently established the personal involvement of Wright, Collett, and Canfield.  (*Id.* at 7-9).

### a.    Equitable Claims

Plaintiff's complaint seeks equitable relief in the form of both declaratory and injunctive relief.  (Docket # 24).  Personal involvement is not required for an award of declaratory or injunctive relief against a defendant in his official capacity.  *Smith v. Bradt*, 2014 WL 7530363, *5 (W.D.N.Y. 2014) ("[alt]hough defendants argue that personal involvement is not sufficiently alleged against the supervisory defendants . . . [,] they ignore the case authority holding that 'personal involvement is not required where a state official is sued in his official capacity for injunctive relief'") (quoting *Calvert v. State of New York*, 2009 WL 3078864, *9 (W.D.N.Y. 2009)), *report and recommendation adopted*, 2015 WL 162998 (W.D.N.Y. 2015); *Mitchell v. N.Y. State Dep't of Corr. Servs.*, 2009 WL 185754, *5 (W.D.N.Y. 2009) ("while personal involvement is necessary for an award of money damages under Section 1983, it is not required for an award of declaratory or injunctive relief against a defendant in his official capacity"); *Davidson v. Scully*, 148 F. Supp. 2d 249, 254 (S.D.N.Y. 2001) ("[p]ersonal involvement of an official sued in his official capacity is not necessary where the plaintiff is seeking only injunctive or declaratory relief under 42 U.S.C. § 1983") (quoting *Glass v. Coughlin*, 1991 WL 102619, *2 (S.D.N.Y. 1991)).  Accordingly, I conclude that the DOCCS defendants have failed to establish their entitlement to judgment on plaintiff's claims for equitable relief.

### b.    Claims for Monetary Damages

"It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Sash v. United States*, 674 F. Supp. 2d 531, 542 (S.D.N.Y. 2009) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)).  Thus, "[i]t is not enough to show that a defendant ultimately

supervised those who allegedly violated plaintiff's [c]onstitutional rights." *Id.* (internal

quotation omitted).  Instead, "to sustain a section 1983 claim against a supervisory official in his

individual capacity, the plaintiff must allege and demonstrate that the official was personally

involved in the alleged constitutional violation." *Pierce v. Ottoway*, 2009 WL 749862, *5

(W.D.N.Y. 2009) (citing *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003)).

According to the Second Circuit, a supervisory defendant may be shown to have

been personally involved in a constitutional violation through evidence that:

> (1) the defendant participated directly in the alleged constitutional
> violation, (2) the defendant, after being informed of the violation
> through a report or appeal, failed to remedy the wrong, (3) the
> defendant created a policy or custom under which unconstitutional
> practices occurred, or allowed the continuance of such a policy or
> custom, (4) the defendant was grossly negligent in supervising
> subordinates who committed the wrongful acts, or (5) the
> defendant exhibited deliberate indifference to the rights of inmates
> by failing to act on information indicating that unconstitutional
> acts were occurring.

*Colon v. Coughlin*, 58 F.3d at 873.[8]

Plaintiff has not adduced any evidence to suggest that Goord or Fischer

promulgated or continued policies or customs that resulted in the deprivation of his constitutional

rights.  Nor has he come forward with evidence that either of them acted with gross negligence in

their supervision of other DOCCS employees.  Finally, plaintiff has proffered no evidence that

either was aware of constitutional violations that he failed to correct or that he acted with

deliberate indifference towards plaintiff's constitutional rights.  Indeed, in his complaint, plaintiff

---

[8]  The Second Circuit has not yet determined the affect, if any, of the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), on the continued viability of all five bases of liability under *Colon*, and district courts within this Circuit are split concerning whether *Iqbal* has nullified some of the bases.  *See, e.g.*, *Shaw v. Prindle*, 2016 WL 4578630, *1 n.2 (2d Cir. 2016) (recognizing issue without resolving the precise contours of supervisory liability); *Raspardo v. Carlone*, 770 F.3d 97, 117 (2d Cir. 2014) (same); *Reynolds v. Barrett*, 685 F.3d 193, 205 n.14 (2d Cir. 2012) (recognizing without resolving district court split in authority concerning viability of supervisory test set forth in *Colon*); *Livecchi v. City of Geneva*, 2015 WL 1808639, *5 n.7 (W.D.N.Y. 2015); *Arnold v. Geary*, 2012 WL 43623, *4 n.5 (S.D.N.Y. 2012) (collecting cases).

has failed to identify any specific conduct or knowledge attributable to Goord and Fischer; rather, he seeks to hold them responsible "solely because of the supervisory position[s] they hold." *De Freitas v. Berkowitz*, 2013 WL 6064196, *4 (E.D.N.Y. 2013). Such allegations are insufficient to establish personal involvement as a matter of law, and I conclude that Goord and Fischer are entitled to summary judgment dismissing claims for monetary damages against them. *See Richardson v. Goord*, 347 F.3d at 435 (supervisor cannot be liable for damages under Section 1983 solely by virtue of supervisory position because no *respondeat superior* liability exists under Section 1983).

I reach a contrary conclusion with respect to plaintiff's claims against Wright, Collett, and Canfield. As an initial matter, the record demonstrates that Canfield and Collett directly participated in the decisions to deny plaintiff the requested surgery. As noted above, Canfield authored a treatment record opining that plaintiff did not require surgery. (Docket # 78-5 at Bates No. 000369). With respect to Collett, Canfield's treatment notes suggest that she was consulted or informed of his determination that plaintiff did not require surgery. (*Id.*). The records further suggest that Collett participated in the CORC's denial of plaintiff's grievance relating to his treatment. (Docket ## 83 at ¶ 9(A) and Ex. 9; 83-1 at ¶ 8 and Ex. C). Finally, Collett was directed by Wright on two separate occasions to investigate and respond to plaintiff's letters. (Docket ## 78-2 at ¶ 7; 83-1 at Ex. D; 83-3 at ¶ 7). These facts are sufficient to raise a triable issue of fact as to Canfield's and Collett's personal involvement. *See Lewis v. Wallace*, 2013 WL 1566557, *5 (N.D.N.Y.) ("courts in this circuit have held that personal involvement may be found where a supervisor receives, reviews, and responds to a plaintiff's grievance"), *report and recommendation adopted*, 2013 WL 1566555 (N.D.N.Y. 2013); *Bearam v. Sommer*, 2013 WL 5405492, *7 (S.D.N.Y. 2013) ("[t]he letters between [plaintiff] and [defendant]

establish that [defendant] was personally aware of [plaintiff's] complaint[;] [i]n addition,

[defendant] became involved when he made the final decision to deny the appeal and informed

[plaintiff] of this himself"); *Chambers v. Wright*, 2007 WL 4462181, *3 (S.D.N.Y. 2007)

("[p]rison doctors who have denied medical treatment to an inmate are 'personally involved' for

the purposes of jurisdiction under § 1983"); *Bussey v. Phillips*, 419 F. Supp. 2d 569, 590

(S.D.N.Y. 2006) ("review of an inmate's case does constitute personal involvement[;] . . . [and

defendant's] signature suggests at least some level of review of [p]laintiff's case").

      I likewise conclude that plaintiff has adduced sufficient evidence of Wright's

personal involvement to defeat summary judgment.  Although the mere receipt of a letter or

grievance by a supervisory defendant is generally insufficient to establish personal involvement,

especially where the defendant refers it to a subordinate for investigation and response, *see Goris*

*v. Breslin*, 402 F. App'x 582, 584 (2d Cir. 2010) (granting summary judgment to Wright where

his "personal involvement was limited to the receipt of two letters from [plaintiff], which he

promptly referred to other individuals for investigation and response") (citing *Sealey v. Giltner*,

116 F.3d 47, 51 (2d Cir. 1997)); *Rivera v. Wright*, 2012 WL 13659, *4 (W.D.N.Y. 2012)

(dismissing claim against Wright who had received letter from plaintiff regarding medical

treatment and had referred letter to subordinate), the rule is not without exception, and each case

must be evaluated on its individual facts, *see Suarez v. Keiser*, 2006 WL 543725, *6 (W.D.N.Y.

2006) ("the details of an inmate's letter might trigger a particular supervisor's duty to investigate

or take some action, or it might not"); *see also McKenna v. Wright*, 386 F.3d 432, 438 (2d Cir.

2004) ("[w]hen allegations of improperly denied medical treatment come to the attention of a

supervisor of a medical program, his adjudicating role concerning a grievance cannot insulate

him from responsibility for allowing the continuation of allegedly unlawful policies within his

supervisory responsibility").  Thus, depending upon the specific facts of a particular case, "a supervisor may be liable for [his] failure to remedy a violation . . . where the violation is ongoing and the defendant has an opportunity to stop the violation after being informed of it."  *Rahman v. Fisher*, 607 F. Supp. 2d 580, 585 (S.D.N.Y. 2009); *Harnett v. Barr*, 538 F. Supp. 2d 511, 525 (N.D.N.Y. 2008) ("where a grievance alleges an 'ongoing' constitutional violation, the supervisory official who reviews the grievance is 'personally involved' if he is confronted with a situation that he can remedy directly").

        In this case, plaintiff sent Wright two detailed letters outlining his condition, the symptoms of his condition, including that he experienced pain in his nipples, the collateral consequences of living with his condition in jail (*e.g.*, harassment by other inmates), and the denials of his request for corrective surgery.  (Docket ## 83 at Ex. 7; 83-1 at ¶ 12 and Ex. F). His last letter informed Wright that he had attempted to obtain treatment through his medical providers and had been scheduled for reconstructive surgery, but had been subsequently notified that the surgery had been denied.  (*Id.*).  In each letter, plaintiff requested that Wright authorize his surgery.  (*Id.*).

        Nothing in the record suggests that Wright, as Deputy Commissioner and Chief Medical Officer of DOCCS (Docket # 24 at ¶ 8), lacked the authority to authorize the surgery. Further, the documentary evidence permits the inference that Wright received and reviewed the letters prior to assigning them to Collett for further investigation and response.  (Docket # 78-6 at Bates Nos. 000673-000676 and 000678-000684).  The record contains little more information as to the extent of Wright's involvement; indeed, Wright himself did not submit an affidavit or other evidence in support of his motion for summary judgment demonstrating "that he was not personally involved in the alleged unconstitutional conduct."  *Harvey v. Farber*, 2011 WL

5373756, *6 (N.D.N.Y.) (denying summary judgment to supervisory defendant where "[d]efendants have not referenced any material in the record to support their contention that [p]laintiff cannot produce any admissible evidence to show [the supervisory defendant's] personal involvement[;] . . . [b]ecause [the defendants] did not meet their initial burden, the burden has not shifted to [p]laintiff to raise an issue of material fact"), *adopted in part and rejected in part on other grounds*, 2011 WL 5373736 (N.D.N.Y. 2011).  The record makes clear that plaintiff's letters to Wright alleged an ongoing constitutional violation because, as the letters explained, he continued to suffer from a purportedly painful and disfiguring condition for which surgery was repeatedly and consistently denied.  Under such circumstances, Wright is not entitled to summary judgment dismissing the claim against him.  *See Zappulla v. Fischer*, 2013 WL 1387033, *10 (S.D.N.Y. 2013) (declining to dismiss plaintiff's claim for money damages against supervisory defendant where plaintiff alleged that defendant, "after being informed of th[e] ongoing [failure to provide adequate medical care] through the grievance process, failed to remedy that wrong"); *Suarez v. Keiser*, 2006 WL 543725 at *6 (refusing to dismiss claim where "[p]laintiff wrote numerous letters to . . . Wright, complaining that he was in pain and being denied medical treatment by individuals who were under [Wright's] supervision").

### 3.    Equal Protection

Defendants contend that plaintiff cannot demonstrate an equal protection violation because he cannot show that he was treated differently from other similarly situated inmates. (Docket # 78-1 at 7-8).  Defendants also maintain that he cannot show that any difference, even if there was one, resulted from intentional and purposeful discrimination.  (Docket # 78-1 at 7-8). Plaintiff counters that his gynecomastic condition causes him pain and discomfort, which qualifies him for corrective surgery under a DOCCS policy pursuant to which other inmates with

gynecomastia accompanied by pain or functional disability have received corrective surgery. (Docket ## 24 at ¶¶ 24, 41, 42; 83-2 at 9).

The Equal Protection Clause of the Fourteenth Amendment requires equal protection under the law.  U.S. CONST. amend. XIV, § 1.  The clause provides that "similarly situated persons be treated equally."  *Tatta v. Wright*, 616 F. Supp. 2d 308, 319 (N.D.N.Y. 2007) (citing *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)).  To prove an equal protection claim, a plaintiff must demonstrate that he was treated differently from other similarly situated persons and the different treatment was based on "impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injur[e] a person."  *Dean v. Lantz*, 2009 WL 2151173, *7 (D. Conn. 2009) (quoting *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000)).  A plaintiff must show that the difference in treatment was "the result of intentional and purposeful discrimination."  *Tatta v. Wright*, 616 F. Supp. 2d at 319 (quoting *Myers v. Barrett*, 1997 WL 151770, *3 (N.D.N.Y. 1997)).  Most equal protection claims involve claims by plaintiffs based on their membership in a protected class, *Neilson v. D'Angelis*, 409 F.3d 100, 104 (2d Cir. 2005), *overruled on other grounds by Appel v. Spiridon*, 531 F.3d 138 (2d Cir. 2008), although a "plaintiff [who] does not allege membership in such a class . . . can still prevail in what is known as a 'class of one' equal protection claim."  *Id.* (citing *Village of Willowbrook v. Olech*, 528 U.S. 563 (2000)).

A plaintiff may assert a "class of one" equal protection claim if the "plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the treatment."  *Village of Willowbrook v. Olech*, 528 U.S. at 564; *see also Holmes v. Haugen*, 356 F. App'x 507, 509 (2d Cir. 2009).  Additionally, as the Second

Circuit has held, a "class of one" plaintiff must show: "(i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of mistake." *Neilson v. D'Angelis*, 409 F.3d 100 at 105; s*ee also Fahs Const. Grp., Inc. v. Gray*, 725 F.3d 289, 292 (2d Cir.), *cert. denied*, 134 S. Ct. 831 (2013); *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010); *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006); *Bowens v. Pollock*, 2010 WL 5589350, *17 (W.D.N.Y 2010), *report and recommendation adopted*, 2011 WL 146836 (W.D.N.Y. 2011).[9]

"In order to succeed on a 'class of one' claim, the level of similarity between plaintiffs and the persons with whom they compare themselves must be extremely high." *Neilson*, 409 F.3d at 104; *see also Johnson v. Schiff*, 2013 WL 5466218, *11 (N.D.N.Y.) ("[t]here must be an extremely high level of similarity between the plaintiff and the persons with whom he compares himself"), *report and recommendation adopted*, 2013 WL 5466638 (N.D.N.Y. 2013). According to the Second Circuit, the standard for "determining whether another person's circumstances are similar to the plaintiff's must be . . . whether they are '*prima facie* identical.'" *Neilson*, 409 F.3d at 105 (quoting *Purze v. Village of Winthrop Harbor*, 286 F.3d 452, 455 (7th Cir. 2002)).

A "class of one" plaintiff must also identify those with whom he claims he is similarly situated. *Green v. McLaughlin*, 480 F. App'x 44, 47-48 (2d Cir. 2012) (motion to

---

[9] In *Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591 (2008), the Supreme Court held that public employees cannot state a "class of one" claim based upon the exercise of discretionary government decision-making. A split in authority exists among district courts in this Circuit as to whether a plaintiff seeking to "establish a class-of-one claim must show that the difference in treatment flowed from non-discretionary action." *Analytical Diagnostic Labs, Inc. v. Kusel*, 626 F.3d 135, 141 (2d Cir. 2010) (refusing to extend *Engquist* to a claim challenging the state's exercise of "its regulatory licensing power"). This Court need not resolve that issue, however, because plaintiff's "class of one" claim nonetheless fails for other reasons, as explained *infra*.

dismiss granted where plaintiff failed to identify any other inmates whose situations were sufficiently similar to his that no reasonable person could see them as different); *see also Victory v. Pataki*, 2013 WL 4539296, *18 (W.D.N.Y. 2013) (plaintiff "fails to identify any other individuals to whom he was similarly situated[;] . . . [a]ccordingly, [p]laintiff's equal protection claim fails as a matter of law"), *affirmed in part, reversed in part, and remanded on other grounds*, 609 F. Appx. 680 (2d Cir. 2015), *opinion withdrawn and superseded*, 632 F. App'x 41 (2d Cir. 2016); *MacPherson v. Town of Southampton*, 738 F. Supp. 2d 353, 371 (E.D.N.Y. 2010) (plaintiffs failed to identify any "comparators or similarly situated entities at all[;] for this reason, [p]laintiffs' equal protection claim…is deficient as a matter of law"). Identifying similarly situated individuals with sufficient specificity permits the court to determine whether the persons in question are in fact "so similar that no rational person could see them as different." *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d at 60.

Plaintiff's complaint asserts that he was treated differently due to "his race, ethnicity, custodial status, and/or because he was singled out on an arbitrary and irrational basis." (Docket # 24 at ¶ 107). Despite this assertion, plaintiff has adduced no facts to make a *prima facie* showing that the difference in treatment was based upon his race, ethnicity, or status as an incarcerated person. Rather, plaintiff contends that DOCCS provided the reconstructive surgery that he has been denied to other inmates suffering from gynecomastia and that no rational basis existed for denying him the same treatment.

Specifically, he claims that his condition was accompanied by "constant pain and discomfort for three long years" (Docket # 24 at ¶ 33) and that "there was an available surgical procedure [through DOCCS] that successfully reversed the effects of [g]ynecomastia" (Docket # 24 at ¶ 41). Plaintiff "also learned that [DOCCS], OMH, and [d]efendants authorized [and]

performed this surgery before on other inmates who were also suffering from [g]ynecomastia and who also developed [g]ynecomastia the same way [p]laintiff did: by taking a combination of prescription medications." (Docket # 24 at ¶ 41). Indeed, Wright's response to plaintiff's interrogatories acknowledges that DOCCS had authorized surgery for other inmates who suffered from gynecomastia and that DOCCS had considered pain and functionality in determining whether to authorize surgery. (Docket # 83-1 at ¶ 19, Ex. L). Because the crux of plaintiff's complaint is that he was treated differently from other inmates suffering from gynecomastia, I interpret his equal protection claim to be a "class of one claim."[10]

Defendants assert, and I agree, that plaintiff has failed to adduce evidence sufficient to create a triable issue of fact as to his "class of one" claim. Although his complaint alleges that another unnamed inmate received the surgery, nothing in the record permits the Court to evaluate whether that inmate is sufficiently similar to satisfy the "class of one" standard. (Docket # 24 at ¶ 41). The deadline for completion of fact discovery has expired,[11] and plaintiff has still not identified any inmates similarly situated to him. (Docket # 62). Indeed, at oral argument, counsel for plaintiff conceded that he could not identify similarly situated inmates who had gynecomastia and received surgery. On this record, defendants are entitled to summary judgment. *See Tatta*, 616 F. Supp. 2d at 319 (defendants' motion for summary judgment granted where record revealed that other identified individuals responded differently than plaintiff to medical treatment); *see also Alsaifullah v. Furco*, 2013 WL 3972514, *10 (S.D.N.Y. 2013) (defendants' motion to dismiss granted where plaintiff with Hepatitis C identified other inmates with "infectious/communicable diseases"; group of purportedly similarly situated inmates was

---

[10] Neither party's submissions discuss "class of one" claims or cite any authority involving "class of one" claims.

[11] The deadline was June 11, 2012, with the exception of the deposition of Nurse Northrup, which was ordered to be completed by December 19, 2012. (Docket ## 62, 65).

too broad to conclude that no rational person could view them as different); *Dean v. Lantz*, 2009 WL 2151173 at *7 (defendants' motion for summary judgment granted where plaintiff failed to provide evidence of other similarly situated inmates who had been treated differently); *Barnes v. Henderson*, 490 F. Supp. 2d 313, 318 (W.D.N.Y. 2007) (defendants' motion to dismiss granted where plaintiff did not identify any similarly situated inmates who were treated differently from him); *Alicea v. Howell*, 387 F. Supp. 2d 227, 236 (W.D.N.Y. 2005) (defendants' motion for summary judgment granted where "plaintiff ha[d] . . . not identified any similarly situated inmates who were treated differently from him, much less shown an 'extremely high' level of similarity between him and them").

In sum, plaintiff has failed to establish a triable issue of fact regarding his "class of one" claim. *Neilson*, 409 F.3d at 104. Accordingly, I recommend that the district court grant defendants' motion for summary judgment dismissing plaintiff's equal protection claim.

## <u>CONCLUSION</u>

For the foregoing reasons, I recommend that the district court grant in part and deny in part defendants' motion for summary judgment. (Docket # 78). Specifically, I recommend that the district court dismiss plaintiff's equal protection claim, his claims against Henderson, Hogan, Carpinello, and Smith, and his claims against Goord and Fischer for monetary damages. I recommend that the district court permit the remaining claims to proceed to trial.

*s/Marian W. Payson*
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
September 29, 2016

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

      **ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

      **ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed. R. Civ. P. 72(b), 6(a) and 6(d) and Local Rule 72(b).

      The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See e.g. Paterson-Leitch Co., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

      **Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

      The parties are reminded that, pursuant to Rule 72(b) of the Local Rules for the Western District of New York, "written objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72(b), or with the similar provisions of Rule 72(a) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.**

      Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to Plaintiff and the attorney for the Defendants.

**IT IS SO ORDERED.**

                          *s/Marian W. Payson*
                          MARIAN W. PAYSON
                     United States Magistrate Judge

Dated: Rochester, New York
       September 29, 2016